**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ELMAR HOTEL MANAGEMENT, LLC ALLEGIANT EQUITIES, LLC, SOCIAL CLUB MANAGEMENT, LLC, and REMO POLSELLI, | |
| Plaintiffs, | Case No. 24 C 9808 |
| v. | Honorable Sunil R. Harjani |
| UNITE HERE LOCAL 1, | |
| Defendant. | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

On July 20, 2024, Arbitrator Gilbert H. Vernon made an arbitration award finding pursuant to a collective bargaining agreement between Defendant Unite Here Local 1 and the Inn of Chicago, a hotel in downtown Chicago, Illinois. The underlying dispute concerned whether the Inn of Chicago violated the agreement when it housed migrants without using the bargaining unit workers to operate the Inn. The award had three main substantive holdings: (1) the Inn of Chicago had operated as a "hotel" when housing migrants; (2) Plaintiffs Elmar Hotel Management, LLC, Allegiant Equities, LLC, Social Club Management, LLC, and Remo Polselli were all included in the term "employer;" and (3) Plaintiffs had violated the agreement in multiple respects. As a result, Arbitrator Vernon directed Plaintiffs to post notices about the violations, awarded prospective and compensatory relief, and retained jurisdiction to resolve any resulting disputes.

Before the Court are three motions: (1) Defendant's motion to confirm the arbitration award [16]; (2) Defendant's motion to dismiss the complaint [17]; and (3) Plaintiffs' motion to dismiss the Counterclaim [35]. The motions all concern whether the Court should vacate or enforce the

arbitration award. For the reasons outlined below, the Court confirms the arbitration award and enters judgment for Defendant.

## Background

This suit seeks to vacate or confirm an arbitration award arising from grievances between the Inn of Chicago and Defendant. Defendant represents employees of the Inn of Chicago who entered into a collective bargaining agreement with the original owner. Over the years, the property has been acquired by different entities, most recently Allegiant Equities. When executing the purchase of the Inn of Chicago, Polselli, signing on behalf of Allegiant, acknowledged that there was an operative collective bargaining agreement. However, instead of signing onto the agreement itself, Allegiant (through Polselli) designated Elmar Hotel Management as the operator of the hotel. Practically this meant that Elmar assumed the collective bargaining agreement and all responsibilities therewithin. Polselli's wife signed the collective bargaining agreement on behalf of Elmar. And Polselli, once again on behalf of Allegiant, signed an owner letter acknowledging the agreement and that it was Elmar's responsibility to hire and manage any bargaining unit employees.

Time passed, a pandemic occurred, and the Inn of Chicago remained out of service until 2023. At that time, Polselli, acting on behalf of the Inn of Chicago, entered a contract to sell blocks of rooms at the Inn of Chicago to house migrants. This agreement was not entered into by Allegiant and Elmar, although it bound them as the owners and operators of the Inn of Chicago. However, instead of using Elmar and the bargaining unit to staff the Inn of Chicago, the migrant contract gave that authority to a third-party. That arrangement did not last. Polselli then designated Social Management Club as the new operator of the Inn of Chicago, taking over for Elmar, but bargaining unit employees were still not employed. Ultimately, this was discovered by the union and

grievances were filed against the Inn of Chicago. To streamline the arbitration, both parties submitted the contractual issues they believed were in dispute to an arbitrator. The Union framed the contractual issues as whether the employer has or is violating certain sections of the collective bargaining agreement and, if so, what remedy should be awarded. Separately, the Inn of Chicago framed the contractual arbitration issues as: (1) whether the Inn of Chicago was operating as a hotel, such that the agreement applied; (2) whether employers were acting as a single employer, joint employer, or alter ego; (3) whether any subcontracting occurred; (4) whether Allegiant or Elmar had obligations to bargain over its decision to contract as a migrant shelter; and (5) whether denying Defendant access to the property violated the law. The arbitrator, in a forty-three-page order, found that: (1) the Inn of Chicago had operated as a "hotel" when housing migrants; (2) Plaintiffs Elmar Hotel Management, LLC, Allegiant Equities, LLC, Social Club Management, LLC, and Remo Polselli were all included in the term "employer;" and (3) the Plaintiffs had violated the agreement in multiple respects. As a result, Arbitrator Vernon directed Plaintiffs to post notices regarding the violations, awarded prospective and compensatory relief, and retained jurisdiction to resolve any resulting disputes.

## Procedural Issues

Before addressing the merits, Plaintiffs argue that the Court should outright deny Defendant's motion to confirm on procedural grounds. They assert that, because the lawsuit is brought under Section 301 of the Labor Management Relations Act, the: (1) Federal Arbitration Act cannot apply; and (2) the only proper vehicle for parties to seek a determination is via cross-motions for summary judgment.[1]

---

[1] Defendant's Consolidated Response [42] briefly mentions in footnote one another procedural concern -- that Plaintiffs' motion to dismiss the Counterclaim [35] "may be untimely" because, while there have been a series of agreed extensions by the parties for briefing schedules, "none of the Court's Orders have expressly extended the date for a responsive pleading to the Counterclaim." [42] at 2 n.1. Plaintiffs sought

The Labor Management Relations Act provides for arbitration of disputes implicating a collective bargaining agreement. *See* 29 U.S.C. § 173. As a technical matter, "[i]n seeking to confirm an arbitration award created by virtue of a collective bargaining agreement, recourse is to the [Labor Management Relations Act], not the [Federal Arbitration Act]." *See Part-Time Fac. Ass'n at Columbia Coll. Chicago v. Columbia Coll. Chicago*, 892 F.3d 860, 864 n.3 (7th Cir. 2018) (cleaned up). However, arbitrations under both acts are "generally subject to the same governing principles." *Id.* (cleaned up).

While Plaintiffs are correct that this lawsuit arises under Section 301 of the Labor Management Relations Act and not the Federal Arbitration Act, the Federal Arbitration Act is still applicable. In fact, the Federal Arbitration Act is often "used as a source of principles to guide the formulation of a federal common law of labor arbitration under section 301." *See Glass Molder, Pottery, Plastics & Allied Workers Int'l Union, AFL-CIO, Loc. 182B v. Excelsior Foundry Co.*, 56 F.3d 844, 848 (7th Cir. 1995). When there is no conflict between the Federal Arbitration Act and Section 301 of the Labor Management Relations Act and the Federal Arbitration Act "provides a procedure or remedy not found in section 301," courts are to apply the Federal Arbitration Act. *See Smart v. Int'l Bhd. of Elec. Workers, Local 702*, 315 F.3d 721, 724–25 (7th Cir. 2002).

The Seventh Circuit's reasoning in *International Union of Operating Engineers, Local No. 841 v. Murphy Company* is instructive. 82 F.3d 185 (7th Cir. 1996). In that case, the company and union submitted a dispute to arbitration as mandated by the collective bargaining agreement. *Id.* at 186. The arbitration hearing was held, and the union filed a petition in federal court to enforce the award. *Id.* at 187. While the Seventh Circuit noted that the federal district court had jurisdiction

---

an extension to answer each of the pending motions including an extension "to file [a] response to Defendant's Counterclaim." [29] at ¶ 4. The Court granted this motion [30] and subsequent motions seeking the same relief [32][34]. Plaintiffs' motion to dismiss is therefore timely.

over the act pursuant to Section 301 of the Labor Management Relations Act, it also looked to the Federal Arbitration Act in determining procedurally whether the arbitration award was challenged in the requisite limitation period. *Id.* at 188. "The [Federal Arbitration Act], which in the Seventh Circuit also creates jurisdiction in the district courts for confirming arbitration awards, dictates that the district court must grant a timely order confirming an arbitration award unless the award has been vacated, modified, or corrected." *Id.* (cleaned up). Because the company had not sought to vacate the award pursuant to the Federal Arbitration Act in the required period, the Seventh Circuit found that the district court had to confirm the ruling under both the Federal Arbitration Act and Section 301 of the Labor Management Relations Act. *Id.* at 188–89. Thus, while Section 301 of the Labor Management Relations Act grants this Court jurisdiction, the Federal Arbitration Act still guides the Court's analysis.

Plaintiffs' more substantial contention is that the Court should deny Defendant's motions because they were not raised as a motion for summary judgment in accordance with Federal Rule 56 and Local Rule 56.1. Not so. Section 301 does not articulate, let alone mandate, a specific procedure for raising validity arguments for arbitration awards. And, as noted above, when the Federal Arbitration Act provides a procedure or remedy not explicit in, or in conflict with, Section 301, courts apply that procedure. *See Smart*, 315 F.3d at 724–25. Contrary to Plaintiffs' assertion, Seventh Circuit precedent demonstrates that parties can seek judicial review of an arbitration award multiple ways, by bringing either a motion: (1) to vacate or confirm under the Federal Arbitration Act; (2) to dismiss; (3) for judgment on the pleadings; or (4) for summary judgment.

First, the Federal Arbitration Act, which guides the Court's analysis, allows for parties to seek a court order either vacating or confirming the arbitration award. *See* 9 U.S.C. §§ 9, 10. Any application made to federal district courts under the Federal Arbitration Act "shall be made and

5

heard in the manner provided by law for the making and hearing of motions[.]" *Id.* at § 6.  In practice, this has taken the form of parties filing a motion with the district court to either confirm or vacate the arbitration award. *See Kinsella v. Baker Hughes Oilfield Operations, LLC*, 66 F.4th 1099, 1102, 1106 (7th Cir. 2023) (affirming district court's denial of motion for vacatur under 9 U.S.C. § 10); *Webster v. A.T. Kearney, Inc.*, 507 F.3d 568, 574–75 (7th Cir. 2007) (same); *see also Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 561 (7th Cir. 2008) (affirming district court's grant of a motion to confirm and denial of a motion to vacate an arbitration award); *Emps. Ins. of Wausau v. Banco De Seguros Del Estado*, 199 F.3d 937, 938–39 (7th Cir. 1999) (same). Given the absence of any procedure under Section 301, the Federal Arbitration Act's procedure of filing a motion to confirm appears to be the favored means for resolving the underlying dispute. *See Smart*, 315 F.3d at 724–25.

Second, the Seventh Circuit has affirmed judgments that use the alternative method of moving to dismiss Complaints that ask to confirm or vacate an arbitration award.  For example, a district court in *Local 15, International Brotherhood of Election Workers, AFL-CIO v. Exelon Corporation* granted a motion to dismiss a Complaint challenging a labor arbitration award for failure to state a claim. 495 F.3d 779, 781 (7th Cir. 2007).  In that case, a union filed suit challenging the arbitration award that a company did not violate the underlying collective bargaining agreement. *Id.*  The company, who was the subject of the adverse award, filed a motion to dismiss the Complaint under Federal Rule 12(b)(6). *Id.* at 782.  The Seventh Circuit affirmed the district court's findings that the arbitrator properly interpreted the contract and did not exceed the scope of their power, as well as the holding that the award did not violate public policy. *Id.*  It also affirmed the district court's grant of the motion to dismiss the Complaint. *Id.*  Other courts in this district have followed suit. *See Int'l Union of Operating Eng'rs, Local 150, AFL-CIO v. J. Pease,*

6

*Inc.*, 2011 WL 2672533, at *1 (N.D. Ill. July 8, 2011) (granting motion to dismiss the Complaint challenging the arbitration award); *Chelmowski v. AT & T Mobility LLC*, 2015 WL 231811 (N.D. Ill. Jan. 15, 2015) *aff'd*, 615 F. App'x 380 (7th Cir. 2015) (granting motion to dismiss the Complaint seeking vacatur of the arbitration award).

Third, the Seventh Circuit in *Unite Here Local 1 v. Hyatt Corporation* affirmed a district court's grant for judgment on the pleadings that confirmed two arbitration awards at issue in the underlying case. 862 F.3d 588, 606 (7th Cir. 2017). In *Unite Here*, a union filed two petitions to confirm two arbitration awards pursuant to Section 301 of the Labor Management Relations Act. *Id.* at 593. The parties filed cross-motions for judgment on the pleadings. *Id.* at 594. The district court granted the motion for judgment on the pleadings in favor of the union, confirming the underlying awards. *Id.* at 594. The Seventh Circuit upheld this finding. *Id.* at 606. Again, other courts in this district have also ruled on motions for judgment on the pleadings in confirming arbitration awards. *See e.g.*, *Lee Quigley Co., Inc. v. Metal Polishers Union, Loc. 8A-28A*, 2007 WL 9814433, at *5 (N.D. Ill. May 29, 2007) (granting motion for judgment on the pleadings and confirming arbitration award); *London v. Fin. Indus. Regul. Auth., Inc.*, 2023 WL 6388206, at *10 (N.D. Ill. Sept. 29, 2023) (granting motion to dismiss, motion for judgment on the pleadings, and confirming the arbitration award).

Fourth, in yet another set of cases, parties have sought summary judgment as a means for determining the validity of the underlying arbitration award. *See Chauffeurs, Teamsters, Warehousemen and Helpers, Local Union No. 135 v. Jefferson Trucking Co., Inc.*, 628 F.2d 1023, 1024 (7th Cir. 1980) (affirming motion for summary judgment on plaintiff's complaint to enforce an arbitration award); *see also Truck Drivers, Oil Drivers Filling Station and Platform Workers Union Loc. 705, Int'l Bhd. of Teamsters, AFL-CIO v. A.D. Connor, Inc.*, 191 F. Supp. 2d 1005,

7

1006 (N.D. Ill. Mar. 5, 2002) (granting summary judgment of a motion to enforce a decision of a grievance committee).  The Seventh Circuit has also affirmed the district court when it confirms an award through a motion for summary judgment. *See e.g.*, *Teamsters Loc. No. 579 v. B & M Transit, Inc.*, 882 F.2d 274, 275 (7th Cir. 1989) (affirming motion for summary judgment on plaintiff's complaint to enforce an arbitration award).

Here, Plaintiffs' Complaint seeks vacatur of the award based on the Federal Arbitration Act, 9 United States Code Section 10(a)(4).  In response, Defendant filed the pending motion to confirm the arbitration award under Sections 9 and 10 of the Federal Arbitration Act – in accordance with Section 6 of the Federal Arbitration Act.  Additionally, Defendant has moved to dismiss Plaintiffs' Complaint challenging the arbitration award [17].  Defendant also filed a Counterclaim asking the Court to confirm the award [18], which Plaintiffs have moved to dismiss [35]. Plaintiffs, despite filing their own motion to dismiss, assert that a motion for summary judgment is the *only* procedurally proper means of seeking confirmation of an arbitration award. This is incorrect.  Nothing prohibits the Court from ruling on the merits of parties' fully briefed motions.  In fact, as exhibited by the abundance of case law above, courts in this district and the Seventh Circuit routinely use these procedural methods to resolve cases seeking a determination on the enforceability of an arbitration award.  While it is true that "courts routinely resolve motions to enforce or vacate labor arbitration awards by way of motions for summary judgment," this is not the sole or even preferred means to enforce or vacate labor arbitration awards. *See Teamsters Loc. Union No. 705 v. L. Neill Cartage Co.*, 2021 WL 4477888, at *1 (N.D. Ill. Sept. 30, 2021).

So, the lack of a summary judgment motion in this case is not an issue. The Court may rule on these procedurally proper motions.[2]

## Substantive Review of the Arbitration Award

"Judicial review of arbitration awards is tightly limited." *Baravati v. Josephthal, Lyon & Ross, Inc*., 28 F.3d 704, 706 (7th Cir. 1994). Confirmation of an award is "usually routine and summary." *Standard Sec. Life Ins. Co. of New York v. FCE Benefit Adm'rs, Inc.*, 967 F.3d 667, 671 (7th Cir. 2020) (*citing Hasbro, Inc. v. Catalyst USA, Inc*., 367 F.3d 689, 691−92 (7th Cir. 2004)). A court will only set aside an arbitration award "in very unusual circumstances." *Id.* (*citing First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995)). "With few exceptions, as long as the arbitrator does not exceed [their] delegated authority, [the] award will be enforced." *Butler Mfg. Co. v. United Steelworkers of Am., AFL-CIO-CLC*, 336 F.3d 629, 632 (7th Cir. 2003).

### A. Scope of Arbitrator Authority

Under the Federal Arbitration Act, federal courts may vacate an arbitration award if there is evidence of: (1) the award being procured by corruption, fraud, or undue means; (2) partiality or corruption in the arbitrator; (3) arbitrator misconduct; or (4) the arbitrator exceeding their authority. *See* 9 U.S.C. § 10(a). Even if the court believes an arbitrator committed serious error, that alone is insufficient to overturn the arbitrator's decision. *See United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987). Here, Plaintiffs assert that the arbitrator went beyond the authority delegated to him by the collective bargaining agreement in four respects: (1) the interpretation of the term "hotel;" (2) the interpretation of the term "employer;" (3) the finding

---

[2] As the Court finds these motions to be procedurally proper under Seventh Circuit precedent, it need not address whether the motions need to be converted to a motion for summary judgment under Federal Rule Civil Procedure 56.

that the employers violated the collective bargaining agreement; and (4) the remedy the arbitrator crafted.

A court must grant an arbitration award great deference if "the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." *Id.* "This is true even if the arbitrator's award contains a serious error of law or fact." *Butler*, 336 F.3d at 632. An arbitrator's authority is "limited by the actual issue submitted by the parties." *See Am. Postal Workers Union v. Runyon*, 185 F.3d 832, 835 (7th Cir. 1999); *see also AGCO Corp. v. Anglin*, 216 F.3d 589, 593 (7th Cir. 2000) ("Arbitrators have the authority to decide only those issues actually submitted by the parties."). Once determined that there is authority, the question is "only whether or not the arbitrator interpreted the agreement, not if the arbitrator's interpretation of the agreement is correct." *See Chicago & N. W. Transp. Co. v. United Transp. Union*, 905 F.2d 171, 173 (7th Cir. 1990). Courts are to resolve any doubts "in favor of enforcing the award." *See Clear Channel Outdoor, Inc. v. Int'l Unions of Painters & Allied Trades, Loc. 770*, 558 F.3d 670, 675 (7th Cir. 2009).

### i. Interpreting "Hotel"

The first inquiry is whether the arbitrator acted within the scope of the authority granted to him by the collective bargaining agreement when interpreting the term "hotel." Arbitration is a means of resolving only disputes "that the parties have agreed to submit to arbitration." *AGCO Corp.*, 216 F.3d at 593. According to Arbitrator Vernon, the Union framed the contractual issues as whether the employer has or is violating certain sections of the collective bargaining agreement and, if so, the applicable remedy. Separately, the Inn of Chicago framed the contractual arbitration issues in steps: (1) whether the Inn of Chicago was operating as a hotel, such that the agreement applied; followed by (2) whether employers were acting as a single employer, joint employer, or

alter ego. The Inn of Chicago then posed additional questions about whether the agreement was violated. The arbitrator agreed with the Inn of Chicago's framing of the issues – starting with whether the Inn of Chicago was operating as a hotel. As this issue was directly put before the arbitrator, construing this term was within the scope of the arbitrator's authority.

Having determined Arbitrator Vernon was acting within the scope of his authority, the remaining question is whether he was construing, interpreting or applying the agreement. "As long as the arbitrator's award draws its essence from the collective bargaining agreement, and is not merely his own brand of industrial justice, the award is legitimate." *Misco*, 484 U.S. at 36 (cleaned up). "A decision draws its essence from the collective bargaining agreement when it has a plausible foundation in the terms of the agreement." *See Clear Channel Outdoor*, 558 F.3d at 675; *see also Hill v. Norfolk and Western Ry. Co.*, 814 F.2d 1192, 1198 (7th Cir. 1987) ("Contracts contain implicit as well as explicit terms, and arbitrators' authority to interpret the latter is as great as their authority to interpret the former."). Here, Arbitrator Vernon, in reviewing whether the Inn of Chicago was acting as a hotel under the collective bargaining agreement, analyzed the migrant shelter contract and how the Inn of Chicago operated in practice. First, Arbitrator Vernon considered the contract governing the operation of the hotel as a migrant shelter. That contract repeatedly referred to the Inn of Chicago as a "hotel." *See* [1-2] at 24; [1-5]. It also used standard jargon for the hotel industry. In practice, the Inn of Chicago sold an entire block of rooms under a contract. Arbitrator Vernon noted that, while functioning as a migrant shelter can be considered atypical, selling a block of rooms to a group is common practice for weddings, conferences, or group meetings. Further, some hotels cater to long-term or residential guests instead of more transient travelers. While the Inn of Chicago may have changed the type of hotel it was operating as, "[n]onetheless, it was still a hotel." [1-1] at 26. The Court may not disrupt Arbitrator Vernon's

reasonable construction of the term "hotel." *See Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 564 (2013) ("Because the parties bargained for the arbitrator's construction of their agreement, an arbitral decision even arguably construing or applying the contract must stand, regardless of a court's view of its (de)merits." (cleaned up)).

The Seventh Circuit's reasoning in *Johnson Controls* is instructive. *See Johnson Controls, Inc. Sys. & Servs. Div. v. United Ass'n of Journeymen & Apprentices of Plumbing & Pipe Fitting Indus. of U.S. & Canada, AFL-CIO*, 39 F.3d 821 (7th Cir. 1994). There, the Seventh Circuit overturned a district court's finding that the arbitrator acted outside his authority when he was interpreting the contractual term "maintenance work." *Id.* at 824. The Seventh Circuit noted that the arbitrator's analysis of the collective bargaining agreement included delving into the history between the parties, the modifications and successive bargaining agreements, and the parties' positions during negotiations. *Id.* Reviewing the arbitrator's decision with the necessary deferential standard, the Seventh Circuit noted that the arbitrator's "analysis clearly illustrate[d] the arbitrator was engaged in interpretation of the contract" by "consider[ing] the surrounding circumstances to determine" meaning. *Id.* at 824–25. Similar here, the arbitrator was given the authority to interpret the collective bargaining agreement, including its application. [1-2] at § 49(e). Vital to whether the agreement applied is the question of whether the Inn of Chicago was operating as a hotel. Arbitrator Vernon reviewed surrounding circumstances and determined the answer was yes. That is within his discretion. It is not for this Court to second-guess the arbitrator's construction of the agreement. *See United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 599 (1960) (courts have no business overruling arbitrator's contractual interpretations); *Colfax Envelope Corp. v. Local No. 458–3M, Chicago Graphic Commc'ns Int'l Union, AFL-CIO*,

20 F.3d 750, 754 (7th Cir. 1994) (arbitrators are meant to resolve questions of interpretation when the meaning of a contract term is unclear).

### ii. Interpreting "Employers"

Second, Plaintiffs contend that Arbitrator Vernon improperly interpreted the term "employer," and, by doing so, overstepped his authority and bound non-signatories to both the agreement and award. Here again, the Court asks whether Arbitrator Vernon acted within the scope of the authority granted to him by the collective bargaining agreement.

As noted above, arbitration can resolve only disputes that the parties agreed to submit. *AGCO Corp.*, 216 F.3d at 593. Part of the contractual issue the parties posed to Arbitrator Vernon was whether the "employer" violated the collective bargaining agreement. In answering this question, the definition of "employer" under the collective bargaining agreement had to be ascertained. The Inn of Chicago, in its briefing to the arbitrator, specifically posed the issue of "whether Allegiant, as a non-signatory to the applicable Collective Bargaining Agreement, is either a single employer or a joint employer, with or an alter ego of Elmar Hotel Management, LLC, who was the signatory employer to the applicable [agreement]." [1-1] at 22. The interpretation of "employer" is squarely within the arbitrator's scope of authority as Plaintiffs sought the arbitrator's determination on this question.

The more substantial question is whether Arbitrator Vernon's decision had a "plausible foundation in the terms of the agreement." *See Clear Channel Outdoor*, 558 F.3d at 675. The arbitration award found that Plaintiffs were operating as an "employer" under the broad definition in the agreement. In so holding, Arbitrator Vernon found Plaintiffs were personally controlled by Polselli based on alter ego liability. Alter ego liability "focuses on the existence of a disguised continuance of a former business entity or an attempt to avoid the obligations of a collective

13

bargaining agreement." *Int'l Union of Operating Eng'rs, Local 150, AFL–CIO v. Centor Contractors, Inc.*, 831 F.2d 1309, 1312 (7th Cir. 1987) (cleaned up). Determining whether alter ego liability is at play requires a fact-intensive inquiry, where the finder of fact must consider numerous relevant factors, including "substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership." *Int'l Union of Operating Eng'rs, Local 150, AFL–CIO v. Rabine*, 161 F.3d 427, 433 (7th Cir. 1998).

Informative to this Court's analysis is the Seventh Circuit's holding in *Centor Contractors*. In that case, two former defendant shareholders appealed the district court's grant of summary judgment enforcing an arbitration award under a collective bargaining agreement with the plaintiff union. *Id.* at 1310. The Seventh Circuit affirmed the district court's ruling that the arbitration award was enforceable against the alter ego party. *Id.* at 1314. In coming to that determination, the Seventh Circuit analyzed whether the partnership was the successor or alter ego to the prior defendant. *Id.* at 1312. While "[b]oth doctrines are usually applied to determine whether one employer is required to bargain with a union," the appellate court saw no reason the "same principles should not be applicable to enforcement of arbitration awards that are part and parcel of the collective bargaining process itself." *Id.* at 1313. The appellate court reviewed the district court's finding and agreed that the entity was not only a successor, but an alter ego attempting to avoid the collective bargaining agreement. *Id.* at 1313–14. Thus, the alter ego entity was bound by the collective bargaining agreement and the arbitration award. *Id.* at 1314.

The holding in *Centor Contractors*, and the "extreme deference" that must be given to an arbitrator in a dispute about a collective bargaining agreement, is conclusive. *See United Food and Commercial Workers, Local 1546 v. Illinois-American Water Co.*, 569 F.3d 750, 754 (7th Cir. 2009). The arbitrator found that all the organizational Plaintiffs were alter egos of Plaintiff Polselli,

who was acting in a manner to avoid the collective bargaining agreement. [1-1] at 26–35. In reaching this conclusion, Arbitrator Vernon reviewed the different agreements and business relationships of the Plaintiffs, and found that these organizations were acting as alter egos, controlled by Polselli. The Arbitrator then looked at the definition of "employer" under the collective bargaining agreement and noted that it was broad. It included other "legal entit[ies] substantially under the control of the Employer." [1-1] at 35. As Polselli controlled the other entities via the alter ego theory, the arbitrator found they were all included under the broad definition of "employer" and were bound by the collective bargaining agreement.

Arbitrators, as the finders of fact, determine whether the alter ego doctrine applies. Furthermore, "the existence of a disguised continuance of a former business entity or an attempt to avoid the obligations of a collective bargaining agreement, such as through a sham transfer of assets…. are critical inquiries in an alter ego analysis[.]" *Centor Contractors,* 831 F.2d at 1312 (citations omitted). Here, as in *Centor Contractor,* it was determined that Polselli was using the entities to avoid the collective bargaining agreement. 831 F.2d at 1313–14. The arbitrator noted that Plaintiffs, under the direction of Polselli, were contracting with different entities to operate the Inn of Chicago in order to avoid having to use the collective bargaining unit. Intent to evade union obligations, though not the touchstone to proving alter ego in some other circuits, is the most critical factor in the Seventh Circuit. *Trs. of Pension, Welfare & Vacation Fringe Ben. Funds of IBEW Local 701 v. Favia Elec. Co.*, 995 F.2d 785, 789 (7th Cir. 1993). Because of this intent to evade, the arbitrator found that Plaintiffs were all bound to the collective bargaining agreement.

Unsurprisingly, Plaintiffs take issue with the arbitrator's holding, arguing that this contravenes the collective bargaining agreement by: (1) binding non-parties; and (2) applying external law. Generally, arbitration agreements are not enforceable against non-signatories. *A.D.*

15

*v. Credit One Bank, N.A.*, 885 F.3d 1054, 1059 (7th Cir. 2018). However, there is a limited exception when veil piercing or alter ego theories apply. *Id.* at 1059–60. As outlined above, part of the question posed to the arbitrator was who qualified as an "employer" based on the collective bargaining agreement. After reviewing the evidence and the parties' relationships, the arbitrator found all the Plaintiffs were "employers" under Section 2(b) of the agreement based on the alter ego theory and evidence that Polselli exercised control over each of these entities.

Both parties point to *Calumet River Fleeting Inc. v. International Union of Operating Engineers, Local 150, AFL-CIO*, which was decided by another court in this district. 129 F. Supp. 3d 607 (N.D. Ill. Sept. 4, 2015). That case is readily distinguishable. In *Calumet*, the court held that the arbitrator's determination that two entities were alter egos did not draw its essence from the collective bargaining agreement. *Id.* at 612. The arbitrator did not delve into the collective bargaining agreement, but instead examined other relationships, company operations, and perceptions to determine the alter ego finding. *Id.* The court reasoned that since the alter ego finding did not rely on the collective bargaining agreement, it was not entitled to deference. *Id.* Here, while it is true the arbitrator relied on external evidence to determine the relationships between Plaintiffs, that was done to interpret the expansive language of the term "employer" under Section 2(b) of the collective bargaining agreement. Arbitrator Vernon had to determine whether each Plaintiff fell into one of the broad categories of:

> "any person, firm, partnership, corporation, joint venture or other legal entity substantially under the control of the Employer covered by this Agreement, or one or more principal(s) of the Employer covered by this Agreement or a subsidiary of the Employer covered by this Agreement, or any person, firm, partnership, corporation, joint venture or other legal entity which substantially controls the Employer covered by this Agreement." [1-1] at 35.

To interpret "employer" under the agreement, the arbitrator had to view Plaintiffs' relationships in context and take into consideration other indicia of intention. *See e.g.*, *Johnson Controls*, 39 F.3d

16

at 825 (arbitrator's interpretation of agreement is viewed in the light of its language, its context, and other indicia of the parties' intention).

Second, Plaintiffs contend that the arbitrator overstepped his authority by looking at external law in interpreting the collective bargaining agreement. This is plainly incorrect. First, the arbitrator does not cite any external cases or law when interpreting the agreement.[3] [1-1]. He spent his forty-three pages laying out the evidence the parties presented and how it informed his interpretation of the collective bargaining agreement. This is what parties bargained for. *See Dexter Axle Co. v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. 90, Lodge 1315*, 418 F.3d 762, 771 (7th Cir. 2005) ("If parties to collective bargaining contracts are unhappy with arbitration awards they can bargain for a different method[.]"). Further, even if the award did draw from external sources, "[t]he arbitrator may seek guidance from many sources outside the agreement as long as his award draws its essence from the agreement." *See Hyland v. United Air Lines, Inc.*, 254 F. Supp. 367, 375 (1966). The only external sources that Arbitrator Vernon referenced were the evidence that the parties submitted to allow him to interpret and apply the collective bargaining agreement to the underlying dispute. There is no evidence that the arbitrator applied external law.

Plaintiffs' final argument on this point is that they did not accede to the arbitrator's authority and therefore could not be forced to arbitrate or have the award enforced against them. This argument is foreclosed by the arbitrator's alter ego finding and the Court's analysis above. *See e.g.*, *Centor Contractors*, 831 F.2d at 1312–14 (binding an alter ego to an arbitration award since the same principle for determining who is required to bargain with a union is applicable to determine who an award is enforceable against). Arbitrator Vernon clearly found that Plaintiffs

---

[3] The Court does note that the arbitrator refers to Section 8(a)(1) and (5) of the National Labor Relations Act in discussing whether employers violated the agreement by having a union representative removed from the property, and in the remedy section. [1-1] at 21, 38, 42. However, this was a direct question posed to the arbitrator by the Union. Other than these minor references, no external laws are reference.

were collectively acting under direction from Polselli. Based on that finding, the arbitrator interpreted "employer" under the collective bargaining agreement to include all the Plaintiffs, despite only the Inn of Chicago being listed in the grievances. The Court finds that the arbitrator acted within his authority in interpreting the term "employers" to include non-signatories.

### iii.    Violation Finding

Third, Plaintiffs assert that the arbitrator violated the collective bargaining agreement in finding that the employers were violating the agreement. But, both parties identified the contractual issue for arbitration as whether there had been a violation of the collective bargaining agreement. This determination was plainly put into the scope of Arbitrator Vernon's authority. He also analyzed and applied different sections from that agreement. *See Misco, Inc.*, 484 U.S. at 38 (award stands if "the arbitrator is even arguably construing or applying the contract[.]"). For example, the arbitration award found that Section 5 of the collective bargaining agreement was violated since Plaintiffs failed to subcontract with the bargaining unit and instead abdicated hiring to another organization. Additionally, Section 6 of the agreement had been violated by failing to provide the union notice and allowing it to bargain about the desire to use an outside workforce. These interpretations draw directly from Section 5 and 6 of the agreement and were within the arbitrator's scope.

### iv.    Crafting a Remedy

The fourth and final challenge Plaintiffs raised against the arbitrator's authority is that the arbitrator improperly crafted a remedy because he had no authority over the non-parties and clearly violated the essence of the agreement in his interpretation. This is simply a rehash of their prior arguments. "[W]here it is contemplated that the arbitrator will determine remedies for contract violations that he finds, courts have no authority to disagree with his honest judgment[.]" *Id*. Here,

the collective bargaining agreement authorized the arbitrator to interpret and apply the contract and find an award that is "final, binding and conclusive on all parties." [1-2] at § 49(e). Plaintiffs' challenge on this basis fails.

### B. Public Policy

Plaintiffs' final argument is that the arbitration award violates public policy. In support, Plaintiffs contend that the hearing was unfair because: (1) Plaintiffs were not provided due process; (2) the award violated public policy; and (3) the arbitrator acted in manifest disregard of the law.

"In the arbitration context, due process is satisfied so long as the arbitrator provided a fundamentally fair hearing, one that meets the minimal requirements of fairness—adequate notice, a hearing on the evidence and an impartial decision by the arbitrator." *See Int'l Bhd. of Elec. Workers v. CSX Transp., Inc.*, 446 F.3d 714, 720 (7th Cir. 2006). Plaintiffs argue that their due process rights were not met because they were not party to the agreement, were provided no notice of the grievance, and were not named in the underlying National Labor Relations Board charge. These contentions ring hollow given the Inn of Chicago (owned and operated by Plaintiffs Allegiant, Elmar, and Polselli) was the one who asked the arbitrator to address the question of whether Allegiant was a single employer, joint employer, or alter ego of Elmar. Moreover, as found by the arbitrator, all Plaintiffs are in some way tied back to Polselli, who was present and testified at the hearing. And, as found in the arbitration award, Plaintiffs were often used interchangeably; the Inn of Chicago signed contracts on behalf of Allegiant and Elmar, Polselli signed on behalf of the different entities, and Social Management Club replaced Elmar.

Plaintiffs also assert that they were denied a fair hearing and due process because the arbitrator drew an adverse inference against Elmar when a witness did not testify on its behalf. The arbitrator noted that because Ms. Karcho (or anyone else) failed to testify to Elmar's

independence, he inferred from the evidence that Polselli was the individual in control of Elmar. "Arbitrators are not governed by the rules of evidence." *Shearson Hayden Stone, Inc. v. Liang*, 653 F.2d 310, 313 (7th Cir. 1981). Additionally, considerations of credibility are not grounds for vacation of an award. *Id.* As the finder of fact, arbitrators determine credibility. Here, Arbitrator Vernon reviewed the relationship of the different organizations, the agreements they entered, and how they interacted with each other. He then noted that there was no evidence of Elmar's independence. Continuing his analysis, Arbitrator Vernon stated that his conclusion may have been different had anyone testified on Elmar's behalf, however, no one did. This was all within his purview. Additionally, the Court "will not vacate an arbitration award because the arbitrator made errors of fact or law." *National Wrecking Co. v. International Broth. of Teamsters, Local 731*, 990 F.2d 957, 961 (7th Cir. 1993). Even if the arbitrator was wrong to infer Elmar lacked independence because of a failure to have a witness testify on its behalf, that is not enough reason to vacate the arbitrator's finding, given his consideration of all the other evidence in the record.

Second, Plaintiffs argue the award violated public policy. "General appeals to 'public policy' do not permit a court to upset an arbitral award." *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 547 (7th Cir. 2002) (cleaned up). Plaintiffs argue that the specific public policy violated here is that non-signatories to the agreement and award are bound by it. This is another means of arguing the arbitrator's alter ego finding and has been rejected. An arbitration award can be bound to individuals who are found to be an alter ego of the entity. *See e.g.*, *Centor Contractors*, 831 F.2d at 1312–14. This prevents individuals from avoiding collective bargaining agreements or awards found under them by simply changing the company that is contracting with the collective bargaining unit.

Finally, Plaintiffs contend Arbitrator Vernon manifestly disregarded the applicable law. "[T]o vacate an arbitration award for manifest disregard of the law, the party challenging the award must demonstrate that the arbitrator deliberately disregarded what the arbitrator knew to be the law in order to reach a particular result." *National Wrecking Co.*, 990 F.2d at 961. Plaintiffs have failed to show that the arbitrator "deliberately disregarded" any of the applicable laws. In fact, Plaintiffs do not assert that Arbitrator Vernon knew a specific law applied and that he ignored it to reach a particular result. Instead, as discussed above, Arbitrator Vernon interpreted the agreement based on the questions the parties proposed and the evidence presented.

## Conclusion

For the reasons stated above, Defendant's motion to confirm the arbitration award [16] and motion to dismiss the complaint [17] are granted. Plaintiffs' motion to dismiss the Counterclaim [35] is denied. The arbitration award is confirmed, and judgment is entered in favor of Defendant.

**SO ORDERED.**

Dated: July 1, 2025

Sunil R. Harjani
United States District Judge